355 S.E.2d ·380

**Alex PRICE, Administrator, etc., et al.**

v.

**Larry HALSTEAD, Bobby Gillenwater, and Timmy Clay.**

**No. 17022.**

Supreme Court of Appeals of West Virginia.

March 19, 1987.

R. Edison Hill, Hill & Peterson, Charleston, for appellant.

Jenkins, Fenstermaker, Krieger, Kays & Farrell, Huntington, Steven P. Meyer, Meyer & Perfater, Charleston, for appellees.

Clarence H. Hall, Conaway & Hall, Madison, for Timmy Clay.

John S. Haight and George S. Sharp, Kay, Casto & Chaney, Charleston, for Vernon Harless.

Timothy E. Huffman, Preiser & Wilson, Stephen P. Goodwin, Goodwin & Goodwin, Charleston, for Halstead.

MILLER, Justice:

In this appeal we consider whether the passengers in a motor vehicle may be held liable for the negligence of their driver. The Circuit Court of Boone County dismissed the action against the defendants holding that the complaint failed to state a cause of action under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.

■ Our law respecting motions to dismiss is well established. We stated in Syllabus Point 1 of *McGinnis v. Cayton*, 173 W.Va. 102, 312 S.E.2d 765 (1984):

" 'The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) Motion, should not dismiss the complaint unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Syl. Pt. 2 of *Sticklen v. Kittle*, [168 W.Va. 147] 287 S.E.2d 148 (1981)."

*See also Mandolidis v. Elkins Indus., Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978); *John W. Lodge Dist. Co. v. Texaco, Inc.*, 161 W.Va. 603, 245 S.E.2d 157 (1978); *Chapman v. Kane Transfer Co.*, 160 W.Va. 530, 236 S.E.2d 207 (1977). We also said in *Chapman*, 160 W.Va. at 538, 236 S.E.2d at 212, that on a "motion to dismiss, the complaint is construed in the light most favorable to [the] plaintiff." The plaintiff's burden in resisting a motion to dismiss is a relatively light one, but he is required at a minimum to set forth sufficient information to outline the elements of his claim. If he fails to do so, dismissal is proper. *John*

*W. Lodge Dist. Co. v. Texaco, Inc., supra.* With these principles in mind, we turn to the salient facts pled in the complaint and the various theories advanced by the plaintiffs to support their action.

I.

The plaintiffs are the administrator of the estate of Kenneth C. Wall and Mr. Wall's surviving wife, Louise Wall. The complaint alleges that on November 24, 1983, Mr. Wall was driving a pickup truck northbound on U.S. Route 119 near Peytona, West Virginia. His wife and two minor children were passengers in the truck. Stephen E. Garretson was driving in a southerly direction in an automobile owned by his mother, and in which the defendants were passengers. According to the complaint, Mr. Garretson was driving while under the influence of alcohol and marijuana and was traveling at an excessive rate of speed.

The complaint also states that both before and during the trip, Mr. Garretson and his passengers were consuming alcoholic beverages and smoking marijuana. All of the passengers were actively engaged in providing these substances to Mr. Garretson. Mr. Garretson lost control of his automobile and struck the Wall's vehicle head-on while attempting to pass another southbound vehicle. Mr. Wall was killed and his passengers received serious bodily injuries.

The plaintiffs advanced four theories of recovery against the defendants. First, they alleged that the defendants were engaged in a joint venture, the purpose of which was to "purchas[e] and/or utiliz[e] gas, beer, and marijuana" while joy riding. Second, they alleged the above described activities constituted a joint enterprise. Third, they alleged the defendants were negligent in failing to restrain or remonstrate Mr. Garretson when they knew or should have known he was driving while under the influence of alcohol and drugs. Finally, it is alleged that the defendants, knowing Mr. Garretson was driving while intoxicated, substantially assisted or en-

couraged his tortious activity by providing him with additional drugs and alcohol.

## II.

### THEORIES OF JOINT VENTURE AND ENTERPRISE

#### A.

■ The plaintiffs attempt to impute liability to the passengers upon alternative theories of joint venture and joint enterprise. While at least one of our older cases apparently used these terms interchangeably, *Horchler v. Van Zandt*, 120 W.Va. 452, 199 S.E. 65 (1938), we take this opportunity to reaffirm our line of cases which serve to distinguish them. A joint venture or, as it is sometimes referred to, a joint adventure, is "an association of two or more persons *to carry out a single business enterprise for profit*, for which purpose they combine their property, money, effects, skill, and knowledge." *Nesbitt v. Flaccus*, 149 W.Va. 65, 73–74, 138 S.E.2d 859, 865 (1964). (Emphasis added).

It is a single, isolated business pursuit which, as we said in *Nesbitt*, may be likened to a partnership, except "that a partnership relates to a general business ... while [a] joint adventure relates to a single business transaction." 149 W.Va. at 74, 138 S.E.2d at 865. We said in *Horchler* that a joint venture "is sometimes called a limited partnership; not limited as to liability, but as to its scope and duration." 120 W.Va. at 456, 199 S.E. at 67. We also pointed out in *Nesbitt* that a joint venture arises out of a contractual relationship between the parties. The contract may be oral or written, express or implied. *See also Pownall v. Cearfoss*, 129 W.Va. 487, 40 S.E.2d 886 (1946); *Gelwicks v. Homan*, 124 W.Va. 572, 20 S.E.2d 666 (1942).

Here, there are no allegations in the complaint which would indicate that the occupants of the car were engaged in any type of business enterprise. Thus, the trial court was correct in dismissing this theory as a matter of law.

#### B.

■ A joint enterprise is distinguished from a joint venture by the fact that there is no business motive underlying the parties' efforts in a joint enterprise. This point was made in a rather peripheral fashion in *Stogdon v. Charleston Transit Co.*, 127 W.Va. 286, 292, 32 S.E.2d 276, 279 (1944), where the Court distinguished "between a 'joint adventure' and a 'joint enterprise', the first being for profit and the second not necessarily so." *See* 30 Am. Jur.2d *Joint Ventures* § 5 (1969).

We have utilized the joint enterprise concept in suits involving automobile accidents where the negligence of the driver is sought to be imputed to the passenger. The most common fact pattern involves a motor vehicle passenger who sues the operator of another vehicle claiming that his negligence was the proximate cause of the accident. This defendant then asserts that the passenger cannot recover because he was engaged in a joint enterprise with the driver of his vehicle, and that his driver's negligence must be imputed to him.

In this case, the plaintiffs seek to hold the passengers directly liable for the negligence of their driver. It is generally recognized that a passenger can be held liable as a defendant for the negligence of his driver if they were engaged in a joint enterprise. This point is tersely stated in 7A Am.Jur.2d *Automobiles and Highway Traffic* § 634 (1980): "It is a general rule that the negligence of a member of a joint enterprise causing injury to a third party is imputable to other members of the enterprise and that all may be held liable for the injury." *See also* 60A C.J.S. *Motor Vehicles* § 444 (1969).

In applying a joint enterprise theory to occupants of a motor vehicle, we have emphasized as the critical element the common right to control the vehicle on the part of its occupants, as indicated by the single Syllabus of *Stogdon:*

"Where there is no showing of a common right to control the use of an automobile, an instruction to a jury that it may return a verdict based upon the

existence of a joint enterprise is erroneous."

This principle was further elaborated upon in Syllabus Point 8 of *Frampton v. Consolidated Bus Lines, Inc.*, 134 W.Va. 815, 62 S.E.2d 126 (1950):

> "The relationship of joint enterprise between the owner of an automobile driving the same and a guest passenger in the vehicle is not established by the mere fact that the driver and passenger were riding together to the same destination for a common purpose, where the passenger had no voice in directing and controlling the operation of the automobile."

*See also Blackburn v. Smith*, 164 W.Va. 354, 264 S.E.2d 158 (1980); *see generally* 7A Am.Jur.2d *Automobiles and Highway Traffic* § 758 (1980).

There has been a rather marked tendency to restrict joint enterprise liability in cases involving motor vehicle passengers. It is now generally agreed, as we held in *Frampton*, that something more is required to invoke the doctrine than an agreement to travel to a particular destination for a common purpose. *See generally* W. Prosser & W. Keeton, *Law of Torts* § 72 (5th ed. 1984). Moreover, most courts now reject application of the doctrine of joint enterprise to arrangements to travel together for merely social or recreational purposes. *E.g., Begley v. Morgan*, 442 So.2d 8 (Ala.1983) (passenger requested driver to take her to store); *West v. Soto*, 85 Ariz. 255, 336 P.2d 153 (1959) (sightseeing trip to another town); *DeSuza v. Andersack*, 63 Cal.App.3d 694, 133 Cal.Rptr. 920 (1976) (running errands); *Easter v. McNabb*, 97 Idaho 180, 541 P.2d 604 (1975) (fishing trip); *Stock v. Fife*, 13 Mass.App. 75, 430 N.E.2d 845, *appeal denied*, 385 Mass. 1103, 441 N.E.2d 1043 (1982) (drive to and from nightclub); *Burford v. Horne*, 300 So.2d 913 (Miss.1974) (passenger requested driver to take him home); *Mims v. Coleman*, 248 S.C. 235, 149 S.E.2d 623 (1966) (passenger accompanied driver at his invitation to run errands); *Hall v. Black-*ham, 18 Utah 2d 164, 417 P.2d 664 (1966) (duck hunting trip); *Edlebeck v. Hooten*, 20 Wis.2d 83, 121 N.W.2d 240 (1963) (hunting trip).

■ From the allegations of the complaint, it appears that the passengers and the driver embarked on a common purpose, that of drinking and joy riding. This, however, would not be the type of endeavor that would give rise to a joint enterprise. Consequently, we find that the circuit court was correct in rejecting the joint enterprise theory as a matter of law.

## III.

### NEGLIGENCE

The plaintiffs' third theory begins with the often stated premise that a guest passenger in a motor vehicle may be guilty of contributory negligence if he fails to exercise reasonable care for his own safety by way of remonstrating the driver when the latter is driving in a reckless or negligent manner. This rule flows from the correlative rights and duties of the driver and his passenger, which we summarized in Syllabus Point 1 of *Herold v. Clendennen*, 111 W.Va. 121, 161 S.E. 21 (1931):

> "Under the laws of this state, the driver of an automobile owes to an invited guest reasonable care for his safety; but the guest must exercise ordinary care for his own safety, and when he knows, or by due diligence should know, that the driver is not taking proper precautions, it becomes the duty of the guest to remonstrate; and failure to do so bars his right to damages in case of injury." [1]

*See also Hutchinson v. Mitchell*, 143 W.Va. 280, 101 S.E.2d 73 (1957); *Hurt v. Gwinn*, 142 W.Va. 259, 95 S.E.2d 248 (1956).

■ From these cases, the plaintiffs would derive a duty owed by automobile passengers to other motorists on the highway. The duty that our guest passenger law recognizes flows from the principle of contributory negligence, i.e., that a passen-

---

1. This syllabus point, as it relates to the passenger's contributory negligence, has been modified by *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979), where we adopted a rule of comparative contributory negligence.

ger has a duty to exercise reasonable care for his own safety. This duty to exercise reasonable care for his own safety cannot be converted into a general duty on the part of a passenger to exercise reasonable care toward third parties.

■ The general rule, as found in 7A Am.Jur.2d *Automobiles and Highway Traffic* § 635 (1980), is that there is no liability on the part of occupants of a vehicle for the negligence of the driver in the absence of a special relationship such as a joint enterprise or venture or master-servant:

> "As a general rule, an occupant of a motor vehicle other than the driver is not liable for injury to a third person due to the negligence of the driver, in the absence of evidence that the occupant had some control over the driver, or that the driver was in the occupant's employ, or that the driver and the occupant were engaged in a joint enterprise." [2]

The plaintiffs also rely on Section 298 of the Restatement (Second) of Torts,[3] but we find their reliance is misplaced as this section does nothing more than define what is meant by the lack of reasonable care. It presupposes that there has been an act done, and the issue it addresses is whether the actor can be charged with failing to exercise reasonable care. Here, the actor is the driver and not the passengers.

■ For the foregoing reasons, we find the trial court was correct in dismissing the plaintiffs' third cause of action.

## IV.

### SUBSTANTIAL ASSISTANCE AND ENCOURAGEMENT

Finally, the plaintiffs rely upon a theory of joint concerted tortious activity as defined in Restatement (Second) of Torts § 876(b) (1966): "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he ... (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." [4] Specifically,

---

**2.** This is in accord with the general rules found in Sections 314 and 315 of the Restatement (Second) of Torts (1966) with regard to the duty to protect others:

> Section 314: "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."

> Section 315: "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

>> "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

>> "(b) a special relation exists between the actor and the other which gives to the other a right to protection."

**3.** Section 298 of the Restatement (Second) of Torts (1966) provides:

> "When an act is negligent only if done without reasonable care, the care which the actor is required to exercise to avoid being negligent in the doing of the act is that which a reasonable man in his position, with his information and competence, would recognize as necessary to prevent the act from creating an unreasonable risk of harm to another."

**4.** The remaining portions of Section 876 are:

> "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

> "(a) does a tortious act in concert with the other or pursuant to a common design with him, or

> \* \* \* \* \* \*

> "(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."

In comment d to Section 876 of the Restatement (Second) of Torts (1966), these statements are made relative to Section 876(b):

> "Advice or encouragement to act operates as a moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same effect upon the liability of the adviser as participation or physical assistance. If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act....

> "The assistance or participation by the defendant may be so slight that he is not liable for the act of the other. In determining this, the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind are all considered."

they allege the defendants lent substantial aid and encouragement to Mr. Garretson in his negligent operation of the vehicle. This theory is sometimes termed as aiding and abetting a tort. The basis for imposing liability under an aiding and abetting theory is that if the breach of a duty by the actor was substantially encouraged by the conduct of a third party, then this party may also be found liable. This theory is by no means novel and is expressed in 7A Am.Jur.2d *Automobiles and Highway Traffic* § 635 (1980):

> "[A] guest may be held liable for the consequences of the driver's negligent operation of his motor vehicle, where the guest directs or encourages the negligent act, or personally co-operates therein. Ratification of the negligent conduct of the driver by a guest may be equivalent to command, and co-operation may be inferred from acquiescence where there is power to restrain."

In a somewhat related vein, we have held that the employer of a motor vehicle operator could be liable to a third party who was injured when the employee fell asleep and lost control of his automobile. *Robertson v. LeMaster,* 171 W.Va. 607, 301 S.E.2d 563 (1983). The employer's liability in *Robertson* was not based on *respondeat superior,* but on the fact that he had caused the employee to work twenty-seven hours and when the employee complained that he was exhausted, the employer sent him to his home some fifty miles away. After an extensive review of various legal authorities, we concluded in Syllabus Point 2:

> "One who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm."

*See also Cavender v. Consolidated Rail Corp.,* 588 F.Supp. 98 (S.D.W.Va.1984).

■ In the present case, the facts are even more egregious than in *Robertson* as the passengers are alleged to have directly participated and to have encouraged the driver to continue to drink and smoke marijuana when he was already visibly intoxicated. There can be no question that if the driver was driving under the influence of alcohol or drugs, this would be a violation of our motor vehicle statute. W.Va.Code, 17C–5–2 (1983). We have in the past held on a number of occasions that the violation of a provision of our motor vehicle statutes is *prima facie* evidence of negligence. *E.g., Kretzer v. Moses Pontiac Sales, Inc.,* 157 W.Va. 600, 201 S.E.2d 275 (1973) (crosswalks, W.Va.Code, 17C–10–3); *Lewis v. McIntire,* 150 W.Va. 117, 144 S.E.2d 319 (1965) (bicycle lights, W.Va.Code, 17C–11–7); *Spurlin v. Nardo,* 145 W.Va. 408, 114 S.E.2d 913 (1960) (adequate brakes, W.Va. Code, 17C–16–1); *Somerville v. Dellosa,* 133 W.Va. 435, 56 S.E.2d 756 (1949) (speed, W.Va.Code, 17C–6–1); *Porterfield v. Sudduth,* 117 W.Va. 231, 185 S.E. 209 (1936) (illegal parking, W.Va.Code, 17C–13–1).

In *Perry v. Melton,* 171 W.Va. 397, 299 S.E.2d 8, 11 (1982), in speaking about an intoxicated driver who had struck a parked truck, we said:

> "Bailey, while driving with a blood-alcohol content of .19 percent, sought to pass a tractor trailer going about fifty-five miles per hour by traveling in excess of that speed in the far right-hand lane designed for emergency parking only. This was, as a matter of law, at least ordinary negligence."

We implicitly recognized in *Hensley v. Erie Insurance Co.,* 168 W.Va. 172, 283 S.E.2d 227 (1981), that an intoxicated driver who operated his vehicle in a reckless manner was not only negligent, but could also be held liable for punitive damages.

Furthermore, if there is any area of social policy on which there has been virtual unanimity of agreement between courts and legislatures it is the need to stem the tide of injuries and deaths arising from driving under the influence of alcohol and drugs. Courts have increasingly expanded the tort law to hold those who dispense alcoholic beverages liable for injuries inflicted on third parties by those who have consumed too much alcohol.[5]

---

5. Justice Bogdanski, dissenting in *Slicer v. Quigley,* 180 Conn. 252, 269–71, 429 A.2d 855, 863

Several courts have addressed the issue of whether passengers can be liable to a third party when they actively encourage the driver, who is already under the influence of alcohol or drugs, to continue its use and such encouragement leads to an accident. In *Aebischer v. Reidt*, 74 Or.App. 692, 704 P.2d 531, *appeal denied*, 300 Or. 332, 710 P.2d 147 (1985), the court did impose Section 876 liability on a group of automobile passengers. It was alleged in *Aebischer* that the passengers had, at various times throughout the evening, purchased marijuana and provided it to the driver. It was further alleged that the driver kept grabbing a pipe containing marijuana and that one of the passengers kept refilling it and passing it around to all in the car, including the driver. The Oregon court held that these facts presented a jury question under the aiding and abetting theory and reversed a summary judgment:

"We conclude that a reasonable jury could, find from the plaintiff's evidence that defendant provided substantial assistance to Smith's negligent driving by continuing to refill the pipe and passing it to him, or knowing Smith would grab it from him, when he knew or should have known that the marijuana would contribute to Smith's intoxication and further impair his ability to drive. That evidence and the evidence that marijuana can impair driving ability and that Smith was affected by the marijuana was sufficient to present a jury question on Reidt's liability." 74 Or.App. at 696, 704 P.2d at 533.

The defendants cite several cases which they contend stand for an opposite result, but we find them not necessarily contrary. In *Cully v. Bianca*, 186 Cal.App.3d 1172, 231 Cal.Rptr. 279 (1986), the court rejected a Section 876 argument on the theory that no substantial joint action was shown on the part of the passengers. Perhaps of more importance to that decision were certain California statutes about which the court stated "the Legislature has decided to insulate from civil liability virtually all persons who provide alcohol to persons who thereafter drive while intoxicated." 186 Cal.App.3d at 1178, 231 Cal.Rptr. at 285.

There is no question that the passengers' involvement in encouraging the driver

(1980), reviewed in considerable detail the various national surveys on the involvement of drunk drivers in automobile accidents and concluded with the statement that:

"Most ... courts ... [hold] that the furnishing of alcoholic beverages may be the proximate cause of injuries sustained by third parties. Alaska: *Vance v. United States*, 355 F.Supp. 756 (D.Alaska 1973) (commercial vendor); Arizona: *Thompson v. Bryson*, 19 Ariz.App. 134, 505 P.2d 572 (1973) (commercial vendor); California: *Coulter v. Superior Court*, 21 Cal.3d 144, 145 Cal.Rptr. 534, 577 P.2d 669 (1978) (social host); *Vesely v. Sager*, 5 Cal.3d 153, 95 Cal.Rptr. 623, 486 P.2d 151 (1971) (commercial vendor); Delaware: *Taylor v. Ruiz*, 394 A.2d 765 (Del.Super.1978) (commercial vendor); District of Columbia: *Marusa v. District of Columbia*, 484 F.2d 828 (D.C.Cir. 1973) (commercial vendor); Florida: *Prevatt v. McClennan*, 201 So.2d 780 (Fla.App.1967) (commercial vendor); *Davis v. Shiappacossee*, 155 So.2d 365 (Fla.1963) (commercial vendor); Illinois: *Colligan v. Cousar*, 38 Ill. App.2d 392, 187 N.E.2d 292 (1963); Indiana: *Brattain v. Herron*, 159 Ind.App. 663, 309 N.E.2d 150 (1974) (social host); Iowa: *Williams v. Klemesrud*, 197 N.W.2d 614 (Iowa, 1972) (social host); Kentucky, *Pike v. George*, 434 S.W.2d 626 (Ky.Ct. of App.1968) (commercial vendor); Louisiana: *Pence v. Ket-chum*, 326 So.2d 831 (La.1976); Massachusetts: *Adamian v. Three Sons, Inc.*, 353 Mass. 498, 233 N.E.2d 18 (1968) (commercial vendor); Michigan: *Grasser v. Fleming*, 74 Mich. App. 338, 253 N.W.2d 757 (1977) (commercial vendor); Minnesota: *Trail v. Christian*, 298 Minn. 101, 213 N.W.2d 618 (1973) (commercial vendor); Mississippi: *Munford, Inc. v. Peterson*, 368 So.2d 213 (Miss.1979) (commercial vendor); Montana: *Deeds v. United States*, 306 F.Supp. 348 (D.Mont.1969) (commercial vendor); New Hampshire: *Ramsey v. Anctil*, 106 N.H. 375, 211 A.2d 900 (1965); New Jersey: *Rappaport v. Nichols*, 31 N.J. 188, 156 A.2d 1 (1959) (commercial vendor); *Galvin v. Jennings*, 289 F.2d 15 (3d Cir.1961) (commercial vendor); New York: *Berkeley v. Park*, 47 Misc.2d 381, 262 N.Y.S.2d 290 (1965); Ohio: *Taggart v. Bitzenhofer*, 35 Ohio App.2d 23, 299 N.E.2d 901 (1972) (commercial vendor); Oregon: *Campbell v. Carpenter*, 279 Or. 237, 566 P.2d 893 (1977); Pennsylvania: *Giardina v. Solomon*, 360 F.Supp. 262 (M.D.Pa. 1973) (social host); Tennessee: *Mitchell v. Ketner*, 54 Tenn.App. 656, 393 S.W.2d 755 (1964) (commercial vendor); Washington: *Callan v. O'Neil*, 20 Wash.App. 32, 578 P.2d 890 (1978) (commercial vendor)." (Footnote omitted).

must be substantial in order to affix Section 876 liability. We would agree with the result in *Olson v. Ische,* 343 N.W.2d 284 (Minn.1984), where the driver and his passenger left a party with each of them carrying a cup of beer. They continued to drink their beer and the accident occurred as they were driving home. There was nothing to suggest that the passenger had substantially encouraged the driver's drinking.

Nor do we find *Slicer v. Quigley,* 180 Conn. 252, 429 A.2d 855 (1980), to be contrary as in that case an instruction based on Section 876 was given, but the jury returned a verdict for the defendant passenger. On appeal, the plaintiff contended that the trial court's Section 876 instruction was too narrow since it did not take into account that the passenger and the driver had been drinking together for two hours before the accident. However, the appeals court found there was no evidence that the passenger "had given substantial assistance or encouragement" during that time. Much the same factual pattern demonstrating a lack of passenger involvement emerges in *Stock v. Fife, supra,* wherein the court held there was no liability.

A case more analogous to the present one is *Cecil v. Hardin,* 575 S.W.2d 268 (Tenn.1978), where the Supreme Court in a 3–2 decision rejected as a matter of law a Section 876 theory on the basis of no substantial passenger involvement. The facts indicated that the passenger had provided beer to the driver and substantially encouraged the driver to continue to drink over a considerable period of time knowing he was already intoxicated. We simply disagree with this result and we believe it was a jury issue as to the passenger's liability.[6]

■ What we discern as a proper rule is that a passenger may be found liable for injuries to a third party caused by the intoxication of the driver of the vehicle in which he is riding, if the following conditions are met: (1) the driver was operating his vehicle under the influence of alcohol or

drugs which proximately caused the accident resulting in the third party's injuries, and (2) the passenger's conduct substantially encouraged or assisted the driver's alcohol or drug impairment.

In view of the fact that the allegations in the complaint stated that the passengers had substantially contributed to and assisted the driver's continued use of alcohol and drugs while he was already impaired and that the accident was the proximate cause of his impairment, the defendants' motion to dismiss as to the plaintiffs' fourth count should not have been granted. Consequently, the judgment of the circuit court is reversed and this case is remanded.

Affirmed, in part, Reversed, in part, and Remanded.

sued a fellow passenger and the driver. They had all been drinking prior to the accident.

---

**6.** *Akins v. Hamblin,* 237 Kan. 742, 703 P.2d 771 (1985), does not in our view fall within the facts of this case since it involved a passenger who